IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

GERRY LYNN DAVIS, JR.                                                                         PLAINTIFF

v.                                            Civil No. 4:19-cv-04014

DEPUTY GARY DORMAN, Hempstead County
Sheriff; JUSTIN HUGHES, Jail Administrator,
Nevada County Detention Facility; OFFICER
DREW RATHER, Jailer Nevada County
Detention Facility; TOMI HASH; REYN BROWN;
And CODY FERGERSON                                                                            DEFENDANTS

## REPORT AND RECOMMENDATION

This is a civil rights action filed *pro* se by Plaintiff, Gerry Lynn Davis, Jr., under 42 U.S.C. § 1983. Before the Court is a Motion for Summary Judgment filed by Defendants Justin Hughes, Drew Rather, and Tomi Hash. (ECF No. 73). Plaintiff has filed a Response. (ECF No. 87). Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

### I. FACTUAL BACKROUND

Plaintiff is currently living in Emmett, Arkansas. His claims in this action against Defendants Hughes, Rather and Hash arise from alleged incidents that occurred during his incarceration in the Nevada County Jail in 2018. ("NCJ").

On November 12, 2018, there was a "brawl" in the NCJ. (ECF No. 11, p. 5). Plaintiff was taken to interrogation by Defendant Hughes after the incident. (ECF No. 74-2, p. 50). While he was being questioned, Plaintiff told Defendant Hughes, "well I probably need to go to the doctor and to get a lawyer." *Id.*

1

Defendant Hash returned Plaintiff to his cell after the interrogation pursuant to Defendant Hughes' instructions. (ECF No. 11, p. 6). Plaintiff states he told Defendant Hash, "remind them I need to go get checked out." (ECF No. 74-2, p. 50).

Plaintiff admits he was aware of the medical request forms at the NCJ and states he had filled out the forms before to receive medical treatment. (ECF No. 74-2, 51). Plaintiff admits he did not file a grievance or medical request to see a doctor or obtain treatment for the alleged injury to his jaw/head area he sustained during the "brawl". (ECF No. 74-2, p. 51). Plaintiff did not identify any additional injury resulting from the alleged lack of medical treatment in his Second Amended Complaint. (ECF No. 11, p. 5).

On November 20, 2018, while lying on the ground next to his cell door, Plaintiff yelled under the door at Defendant Rather, "Mr. Penis, please get me a cup of hot water." (ECF No. 74-2, p. 47). Defendant Rather responded by kicking the cell door. *Id.* The door moved approximately one-quarter of an inch and knocked Plaintiff's partial tooth out of his mouth. *Id.* at p. 46. Plaintiff states he does not believe Defendant Rather knew how close Plaintiff was to his cell door when he kicked the door. *Id.* at p. 47.

On December 28, 2018, Plaintiff filed the instant lawsuit in the Eastern District of Arkansas. (ECF No. 1). On February 4, 2019, the case was transferred to the Western District of Arkansas, Texarkana Division. (ECF No. 3). In response to this Court's orders, Plaintiff filed an Amended Complaint on March 6, 2019, (ECF No. 6), and a Second Amended Complaint on March 20, 2019. (ECF No. 11). Plaintiff named the following individuals as Defendants in the Second Amended Complaint: Deputy Gary Dorman, Jail Administrator Justin Hughes, Officer Drew

Rather, Tomi Hash, Reyn Brown, and Cody Ferguson.[1]  *Id.*  Plaintiff was a pre-trial detainee at the time he filed this lawsuit.  *Id.* at p. 3.  In addition, he states he "…never heard of the word Grievance."  *Id.* at p.2.

Plaintiff describes Claim One of the Second Amended Complaint as "trespassing" and identifies Defendants Dorman, Brown, and Ferguson as the individuals responsible for violating his constitutional rights.[2]

In Claim Two of the Second Amended Complaint, Plaintiff alleges defendant Hughes and Hash denied him medical care on November 12, 2018.  He specifically states "Hughes Brought me to interagation after Jail house Brawl, I told him I needed my lawyer and a Doctor he told them to take Davis back to cell, Tomi Hash took me and I told her I needed to go to hospital, she said she would tell them, they never took me."  (ECF No. 11, p. 6).  In addition, Plaintiff asserts an official capacity claim against Defendants Hughes and Hash stating, "I should have been check out because of broken jaw injury from when I was younger, the Doctor told me I never need to get hit there again, I could drive the bone up threw my Brain."  *Id.* at p. 7.

In Claim Three, Plaintiff alleges Defendant Rather used excessive force against him on November 20, 2018, when he "kicking door with slack to the inside, knocking out [Plaintiff's] tooth and chiping teeth."  (ECF No. 11, p. 7).  Although Plaintiff indicates he is suing Defendant Rather in both his individual and official capacities for Claim Three, he does not describe any custom or policy he believes caused the violation of his constitutional rights.  *Id.* at p. 8.

Plaintiff is seeking compensatory and punitive damages.  (ECF No. 11, p. 8).

---

[1] Defendants Dorman, Brown and Ferguson have filed summary judgment motions which the Court will address separately.  (ECF Nos. 65, 69).
[2] On April 30, 2020, I entered a Report and Recommendation recommending Defendant Ferguson be granted summary judgment on Plaintiff's claims against him.  (ECF No. 88).

On January 8, 2020, Plaintiff provided sworn testimony during his deposition taken at the Grimes Unit of the Arkansas Department of Correction.[3] (ECF No. 74-2).

On February 24, 2020, Defendants Hughes, Rather and Hash filed the instant motion arguing they are entitled to summary judgment because: 1) Plaintiff has not identified any custom or policy of Nevada County which caused a violation of Plaintiff's constitutional rights to establish official capacity liability; 2) Plaintiff failed to exhaust his administrative remedies as to his claim for denial of medical care; 2) Defendants did not deliberately disregard Plaintiff's medical needs; 3) Defendant Rather did not use excessive force against Plaintiff; and 4) Defendants are entitled to qualified immunity. (ECF No. 73).

On April 27, 2020, Plaintiff filed a Response in opposition to Defendants' motion stating only, "I, Gerry Lynn Davis Jr. have no disputed facts from Examination by counsel for Defendants the Nevada County Jailers, By Mr. Heaton on January 8, 2020 at the Grimes Unit in Newport, Arkansas." (ECF No. 87).

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine

---

[3] During his deposition Plaintiff stated his claim for denial of medical care should only be against Defendant Hughes, not Defendant Hash. Plaintiff agreed he wanted Defendant Hash to be dismissed from the instant lawsuit. (ECF No. 74-2, p. 51).

4

issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co*., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing, *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

#### A. Failure to Exhaust Administrative Remedies

Defendants Hughes and Hash argue Plaintiff failed to exhaust his administrative remedies on his claims they denied him medical care after the jail "brawl" before he filed the instant lawsuit and consequently those claims are barred.

The Prison Litigation Reform Act ("PLRA") in 42 U.S.C. § 1997e(a) provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court concluded "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id*. at 218

(internal quotation marks and citation omitted). The Court stated the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*.

The Eighth Circuit has recognized two exceptions to the PLRA exhaustion requirement: (1) when officials have prevented prisoners from utilizing the grievance procedures; or (2) when the officials themselves fail to comply with the grievance procedures. *See Gibson v. Weber,* 431 F.3d 339, 341 (8th Cir. 2005) (citing *Miller v. Norris*, 247 F.3d 736 (8th Cir. 2001) (explaining a prisoner is only required to exhaust those administrative remedies that are available and any remedies that prison officials prevent a prisoner from utilizing are not considered available)).

Although Defendants Hughes and Hash have not provided the Court with the NCJ's written policy regarding the submission of medical requests or grievances, Plaintiff admits in his deposition he utilized the NCJ's medical request form procedure on several occasions. In addition, Plaintiff admits, and the summary judgment record confirms, he did not submit a written medical request or grievance with respect to his need for medical care after the "brawl" incident at the NCJ on November 12, 2018. Instead, Plaintiff alleges in his Second Amended Complaint he verbally told Defendant Hughes "I needed my lawyer and a doctor…I told [Defendant Hash] I needed to go to hospital…they never took me. (ECF No. 11, p. 6).

Plaintiff has not alleged Defendant Hughes or Hash prevented him from utilizing the written medical request/grievance procedure or failed to comply with the procedure itself. Plaintiff's verbal statements concerning his desire to go to the doctor or to the hospital after the "brawl" at the NCJ did not satisfy the requirements of the MCDC's grievance procedure to submit

written requests. Accordingly, I recommend Plaintiff's claims for denial of medical care against Defendants Hughes and Hash be dismissed for failure to exhaust his administrative remedies.

### B. Denial of Medical Care

Even if Plaintiff had complied with the NCJ's grievance and medical request procedures the summary judgment record demonstrates Defendants Hughes and Hash were not deliberately indifferent to Plaintiff's medical needs.

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to the serious medical needs of prisoners. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). This prohibition applies equally to pretrial detainees. *Butler v. Fletcher,* 465 F.3d 340, 345 (8th Cir. 2006). To prevail on his claims, Plaintiff must prove Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted). To establish the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness,

which demands more than negligent misconduct." *Popoalii v. Correctional Medical Services,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted). A plaintiff must show that an official "actually knew of but deliberately disregarded his serious medical need." *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006). However, intentionally denying or delaying access to medical care may constitute deliberate indifference. *See Estelle,* 429 U.S. at 104-05; *Dulany*, 132 F.3d at 1239.

When a delay in medical treatment is the alleged constitutional deprivation, the objective seriousness of the deprivation must also be measured by reference to the effect of delay in treatment. As a result, to succeed on a delay in medical treatment claim, the plaintiff "must place verifying medical evidence in the records to establish the detrimental effect of delay in medical treatment." *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (quotation marks omitted) (quoting *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997)). On summary judgment, a plaintiff must offer evidence a delay in treatment had a detrimental effect. In the absence of such evidence, a plaintiff "fail[s] to raise a genuine issue of fact on an essential element of his claim." *Id.*

First, the Court is not convinced Plaintiff's alleged injury to his jaw or head during the "brawl" incident at the NCJ constitutes a serious medical condition. Plaintiff testified during his deposition he was hit "all over" and his "head hurt". He also admitted he was not bleeding and had not lost consciousness during the incident. (ECF No. 74-2, p. 49). Even if the Court assumes for purposes of this opinion Plaintiff's alleged injuries are serious medical conditions, there is no evidence Defendants Hughes or Hash were deliberately indifferent to Plaintiff's medical needs. "[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to

8

the inmate's health and then failed to act on that knowledge." *Long v. Nix,* 86 F.3d 761, 765 (8th Cir.1996).

Here, there is no evidence Plaintiff informed Defendants Hughes or Hash about the head injury he sustained years ago. In addition, Plaintiff never submitted a medical request seeking care after the "brawl" or a grievance complaining he was denied care. Moreover, Plaintiff has failed to submit any verifiable medical evidence that a delay in the treatment of alleged injuries had any detrimental effect on his condition. Accordingly, I recommend Defendants' Hughes and Hash be granted summary judgment on Plaintiff's claims he was denied medical care.

### C. Excessive Force

Plaintiff alleges Defendant Rather used excessive force against him when he kicked Plaintiff's cell door in response to Plaintiff's name calling causing a portion of Plaintiff's tooth to be knocked out. "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "[O]rdinary errors of judgment" do not rise to the level of an Eighth Amendment violation. *Id.* at 322. "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is … whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).

Here there is no dispute as to the facts. Plaintiff admits he called Defendant Rather a name when he asked him to bring him a cup of hot water and Defendant Rather responded by kicking the door of Plaintiff's cell. During his deposition, Plaintiff testified when Defendant Rather kicked the cell door it moved approximately a quarter of inch hitting Plaintiff in the face. Plaintiff also testified there was no way Defendant Rather knew Plaintiff had his face next to the cell door.

9

While Defendant Rather's reaction to Plaintiff's name calling might be considered an error in judgment, there is no summary judgment evidence to establish Defendant Rather kicked Plaintiff's cell door "maliciously and sadistically for the very purpose of causing harm." *Whitley,* 475 U.S. 312, 322; *see Roberson v. Goodman,* 296 F.Supp.2d 1051 (D. North Dakota 2003) (dismissing plaintiff's claim of excessive force where prison guard kicked cell door in an attempt to close the cell door to protect himself); *Thomas v. Byrd*, Civ. No. 08-03840, 2009 WL 4546666, *8 (E. D. Ark. 2009) (dismissing with prejudice an excessive force claim where a prison official did not intend to pepper spray the plaintiff but instead was protecting himself against another inmate). Accordingly, I recommend Defendant Rather's summary judgment motion be granted as to Plaintiff's claim for excessive force.

### D. Official Capacity Claims

Plaintiff also sues Defendants in their official capacities. Under § 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities. *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998). Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, Plaintiff's official capacity claims against Defendants Hughes, Hash and Rather are treated as claims against Nevada County. *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish liability on the part of Nevada County under section 1983, "plaintiff must show that a constitutional violation was

committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted).

Here, Plaintiff has not alleged any policy, practice, or custom of Nevada County contributed to the alleged violation of Plaintiff's constitutional rights. Accordingly, Plaintiff's official capacity claims against Defendants fail as a matter of law. *Id.*[4]

### IV. CONCLUSION

For the reasons stated above, I recommend Defendants Hughes, Hash and Rather's Motion for Summary Judgment (ECF No. 73) be **GRANTED** and all individual and official capacity claims against Defendants be **DISMISSED WITH PREJUDICE**.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 30th day of April 2020.

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE

---

[4] Because the Court has found Defendants did not violate Plaintiff's constitutional rights it is not necessary to address the issue of qualified immunity.