IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

GERRY LYNN DAVIS, JR.                                        PLAINTIFF

v.                              Civil No. 4:19-cv-04014

DEPUTY GARY DORMAN, Hempstead County
Sheriff; JUSTIN HUGHES, Jail Administrator,
Nevada County Detention Facility; OFFICER
DREW RATHER, Jailer Nevada County
Detention Facility; TOMI HASH; REYN BROWN;
 And CODY FERGERSON                                         DEFENDANTS

## REPORT AND RECOMMENDATION

This is a civil rights action filed *pro* se by Plaintiff, Gerry Lynn Davis, Jr., under 42 U.S.C.

§ 1983.  Before the Court is a Motion for Summary Judgment filed by Defendants Gary Dorman

and Reyn Brown.  (ECF No. 65).  Plaintiff filed a Response (ECF No. 79) and Defendants filed a

Reply.  (ECF No. 81).  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the

Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the

undersigned for the purpose of making a Report and Recommendation.

## I. FACTUAL BACKROUND

Plaintiff is no longer incarcerated and is currently living in Emmett, Arkansas.  His claims

in this action against Defendants Dorman and Brown arise from searches and seizures of his

residence, a controlled buy of drugs, and his subsequent arrests in 2018.  (ECF No. 11).

On August 30, 2018, agents with the Eighth North Task Force ("DTF") visited Plaintiff's

residence in search of two wanted individuals with felony arrest warrants.  The agents requested

and obtained Plaintiff's permission to search his residence.  The individuals were not located at

the residence.  During the search for the individuals, agents observed evidence of illegal controlled

substances at the residence, including a live marijuana plant in a bucket outside near the front door. (ECF No. 66-1, p. 1 and 66-2, p.1).

According to Plaintiff, the DTF agents requested his permission to search his residence on August 30, 2018, for one individual – Gage Dillard – and Plaintiff granted permission to the agents to search for Mr. Dillard.  (ECF No. 66-3, p. 21).

After returning from Plaintiff's residence on August 30, 2018, DTF Agent Jeremy McBride[1] executed an Affidavit for Search and Seizure Warrant testifying at a residence "described as a red, two story, metal residence with the front door of the residence facing East" and "further described as the first house on the left travelling South on Nevada 275 approximately .5 miles from Highway 73," there was at that time "being concealed controlled substance, drug paraphernalia, United States currency, electronics, and documents for the sale of drugs[.]"  (ECF No. 66-1, pp. 4-5).  A search warrant was obtained, and DTF agents performed a second search of Plaintiff's residence on August 30, 2018.  (ECF No. 66-1, p. 6).  Plaintiff was arrested that day for manufacturing marijuana and transported to the Nevada County Jail ("NCJ").

During the search of Plaintiff's residence on August 30, 2018, Defendant Dorman remained "primarily" outside. However, Defendant Dorman conducted the search of Plaintiff's person incident to his arrest, finding a set of digital scales and methamphetamine in Plaintiff's pants.  (ECF No. 66-1, pp. 1-2).

According to Plaintiff, although the Affidavit and search warrant incorrectly listed the address of his residence as 234 Nevada 275 when his correct address was 294 Nevada 275, the description of his residence in the Affidavit was correct except that it should have said the first

---

[1] Jeremy McBride is not a named Defendant in this lawsuit.

house on the "right" instead of the first house on the "left".  (ECF No. 66-3, pp. 15-16, 19).

A search warrant return was executed on August 31, 2018, providing an inventory of the items seized during the August 30, 2018 search of Plaintiff's residence.  The items seized included two plastic baggies containing a substance believed to be methamphetamine, digital scales, two baggies containing a substance believed to be marijuana, multiple glass pipes and cell phones, the live marijuana plant under the air conditioner, and two additional live marijuana plants in the back yard of the residence.  (ECF No. 66-1, p. 7).

On October 3, 2018, Defendant Brown and Defendant Cody Ferguson conducted a controlled purchase of methamphetamine from Plaintiff at his residence.  A confidential informant advised he could purchase methamphetamine at the residence.  Defendants Brown and Ferguson equipped the informant with a video camera and one-hundred forty dollars ($140) in U. S. currency, and the informant purchased methamphetamine from Plaintiff at Plaintiff's residence on October 3, 2018.  (ECF No. 66-2, pp. 9-10).

On October 10, 2018, based on the events surrounding the controlled substance purchase that occurred on October 3, 2018, Defendant Brown executed an Affidavit for Plaintiff's arrest for committing the offense of Delivery of Methamphetamine.  (ECF No. 66-2, pp. 13-14).  That same day based on Defendant Brown's Affidavit, state court Judge Wright found there were reasonable grounds for believing Plaintiff committed the offense of Delivery of Methamphetamine and issued an arrest warrant for Plaintiff.  (ECF No. 66-2, p. 15).

In addition, based on multiple controlled substance purchases, including the October 3, 2018 purchase involving Plaintiff, Defendant Brown executed an Affidavit for a Search and Seizure Warrant on October 10, 2018, for Plaintiff's "known residence" described in part as "234 Nevada 275…a red, two story, metal residence with the front door of the residence facing

3

east…first building on the left traveling South on Nevada 275 approximately.5 miles from Highway 73…."  (ECF No. 66-2 pp. 16-20).  Based on this affidavit, Judge Wright also issued a Search and Seizure Warrant for Plaintiff's residence.  (ECF No. 66-2, p. 21).

On October 10, 2018, the Arrest Warrant and Search and Seizure Warrant were executed, and Plaintiff was arrested at the residence described in the warrants by Deputy Morris.[2]  (ECF No. 66-2, pp. 22-23).  Upon Plaintiff's arrest and execution of the search warrant, agents found controlled substances and paraphernalia, resulting in additional criminal charges against Plaintiff.  (ECF Nos. 66-2, pp. 22-27).  Defendant Dorman was present during the search of Plaintiff's residence on October 10, 2018, acting in a supervisory role, but he was not directly involved in the search.  (ECF No. 66-1, p. 2).

On October 12, 2018, Defendant Brown executed an affidavit for warrant of arrest of Plaintiff for possession of drug paraphernalia and possession of a controlled substance, based on the evidence seized during the search conducted on October 10, 2018.  (ECF No. 66-2, pp. 25-27).

Plaintiff was charged with eight (8) crimes stemming from his arrest and the subsequent search of his residence pursuant to a search warrant on August 30, 2018, in *State v. Davis,* Nevada County Circuit Court No. 50CR-18-140.   Plaintiff was charged with possession of methamphetamine with intent to deliver (class A felony), use or possession of paraphernalia to manufacture methamphetamine or cocaine (class B felony), maintaining a drug premises (class C felony), manufacture of a Schedule IV controlled substance (class D felony), possession of drug paraphernalia (class D felony), and possession of a controlled substance (class A misdemeanor).

---

[2] Deputy Morris is not a named Defendant in this lawsuit.

(ECF No. 66-4, pp. 1-4).[3]

Plaintiff was charged with delivery of methamphetamine (class B felony) stemming from the controlled buy on October 3, 2018, in *State v. Davis,* Nevada County Circuit Court No. 50CR-18-167.  (ECF No. 66-4, p. 12).  Plaintiff was charged with four crimes stemming from the search of his residence pursuant to a warrant on October 10, 2018, in *State v. Davis,* Nevada County circuit Court No. 50CR-186.  (ECF No. 66-4, pp. 14-15).

On March 11, 2019, Plaintiff signed a Plea and Waiver in Nevada County Circuit Court Case Nos. 50CV-18-140, 50CR-18-167, and 50CR-18-186.  In the Plea and Waiver, Plaintiff acknowledged he understood he entered a plea of no contest and "the court treats the plea of no contest as a plea of guilty."  Plaintiff also indicated in the Plea and Waiver that "no promises, representations or threats have been made to or against him by anyone to induce or cause him to enter a plea of not contest to the charges herein."  In addition, Plaintiff attested by entering the plea he waived "any and all objections to the proceedings herein against him."  (ECF No. 66-4, p. 13).

Defendant Dorman states he did not seize any U.S. currency from Plaintiff's person or residence on August 30, 3018, October 3, 2018, October 10, 2018 or any other date.  (ECF No. 66-1, p. 2).  Defendant Brown also states did not seize any U.S. currency from Plaintiff's person or residence on August 30, 2018, October 3, 2018, October 10, 2018, or any other date.  (ECF No. 66-2, p. 3).

Defendant Dorman states he did not have any involvement in the criminal proceedings initiated against Plaintiff in Nevada County Circuit Court Case Nos. 50CF-18-140, 50CR-18-167,

---

[3] The referenced exhibits are a collection of file-marked public records from Plaintiff's state court criminal and civil cases – Nevada County Circuit Court Case Nos. 50CV-18-140, 50CR-18-167, and 50CR-18-186.  The Court will take judicial notice of these public records.  Fed. R. Evid. 201; *See, e.g., Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) (noting the district court correctly took judicial notice of public state-court records and stating "court records are public records" in all states).

or 50CR-18-186 other than his presence at Plaintiff residence on August 30, 2018 and October 10, 2018.  (ECF No. 66-1, p.3).  Defendant Dorman also states he did not force, coerce, or encourage Plaintiff to plead guilty to the crimes he was charged with in these cases.  *Id.*

Defendant Brown states he did not have any involvement in the criminal proceedings initiated against Plaintiff in Nevada County Circuit Court Case Nos. 50CV-18-140, 50CR-18-167, and 50CR-18-186, other than the controlled buy and searches described above which formed the basis of some of the charges in those cases.  (ECF NO. 66-2, p. 4).  Defendant Brown also states he did not force, coerce, or encourage Plaintiff to plead guilty to the crimes he was charged with in these cases.  *Id.*

On December 28, 2018, Plaintiff filed the instant lawsuit in the Eastern District of Arkansas.  (ECF No. 1).  On February 4, 2019, the case was transferred to the Western District of Arkansas, Texarkana Division.  (ECF No. 3).  In response to this Court's orders, Plaintiff filed an Amended Complaint on March 6, 2019, (ECF No. 6), and a Second Amended Complaint on March 20, 2019.  (ECF No. 11).  Plaintiff named the following individuals as Defendants in the Second Amended Complaint:  Deputy Gary Dorman, Jail Administrator Justin Hughes, Officer Drew Rather, Tomi Hash, Reyn Brown, and Cody Ferguson.[4]  *Id.*  Plaintiff was a pre-trial detainee at the time he filed this lawsuit.  *Id.* at p. 3

Plaintiff describes his individual capacity claim against Defendants Dorman and Brown[5] as "Trespassing".  (ECF No. 11, p. 4.)  Specially Plaintiff alleges on August 30, 2018:

---

[4] On April 30, 2020, I entered two Report and Recommendations recommending Defendants Ferguson, Rather, Hash, and Hughes summary judgment motions be granted.  (ECF Nos. 88, 89).  On May 4, 2020, I entered an Amended Report and Recommendation replacing (ECF No. 88) recommending dismissal of all individual capacity claims as the official capacity claims against Defendant Ferguson were previously dismissed.  (ECF No. 90).

[5] Plaintiff also alleged Defendant Ferguson was involved in the "trespassing" claim.

I was awoke by my son with two DTF agents standing in our hallway between us and the back door exit, ordering us out in the yard. They were looking for someone my son knew. They took $1490.00 out of my wallet, took us to jail, I paid $5000.00 to bond out they came back Oct 10th claiming; I sold meth to a confidential source, took me back to jail, forced me to take a plea-deal without producing the confidential source, threatening a long Prison sentence if I took it to trial.

(ECF No. 11, pp. 4-5). Plaintiff also asserts an official capacity claim against Defendants Dorman and Brown and describes it as follows: "coming in my house while I was sleeping, looking for someone I hardly even knew." *Id.* at p. 6. Plaintiff is seeking compensatory and punitive damages. *Id.* at p. 8.

During Plaintiff's deposition taken on January 8, 2020, Plaintiff testified he is also suing Defendants Dorman and Brown for unlawful arrest arising from the controlled buy on October 3, 2018 because "they claim I had a controlled buy video of selling meth to a confidential informant…but they never would show it to me…and the arrest warrant he come back with had the wrong address on it." (ECF No. 66-3, p. 7).

On February 19, 2020, Defendants Dorman and Brown filed the instant motion arguing they are entitled to summary judgment because: 1) the search warrants did not violate the Fourth Amendment; 2) Defendants Dorman and Brown did not violate Plaintiff's constitutional rights; 3) Defendants Dorman and Brown are entitled to qualified immunity; and 4) Plaintiff has not identified any custom or policy of Hempstead County or the DTF which caused a violation of Plaintiff's constitutional rights to establish official capacity liability. (ECF No. 65).

On April 13, 2020, Plaintiff filed a Response in opposition to Defendants' motion stating:

The DTF never produced Search Warrant on Aug 30, 2018, they would not let any of my family in house as they searched, the warrant they produced after I filed suit is identical to the one they had on oct. 10, the only difference is the time and Date. They had no reason to believe there was drug's there Aug 30 2018, They were there looking for Gage Dillard. Mapp vs. Ohio says they cannot come to my house looking for someone and gather evidence against me without getting warrant

first.[6]…

My correct address was 294 Nev 275, when they have 234 Nev 275 on all documents. If they would have went to 234 Nev 275 looking for Gage Dillard they would have never woke me that morning. 234 from 294 is 60 Boxholder's not just one digit. Gerry and Marilyn Davis live at the first house on the left traveling South on Nev 275, My house is on the right when traveling South…

Dorman et al did take $1490.00 and it is true it was not listed among the items seized in the search warrant return. A black hand-gun was also not listed. There was not black hand-gun…

(ECF No. 79, pp. 2, 8, 10).  On April 15, 2020, Defendants Dorman and Brown filed a Reply (ECF No. 81) reasserting their arguments in support of the summary judgment motion and pointing out Plaintiff included state court pleadings with his Response including a court order directing the return of $1490.00 to him.  (ECF No. 79, p. 11).  It is not clear from the record whether Plaintiff has received the funds.

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co*., 165 F.3d 602, 607 (8th Cir. 1999).

---

[6] In addition to his own affidavit, Plaintiff submitted affidavits from Marilyn Davis and Gerry Davis Jr. stating "on August 30, 2018, the DTF never produced a Search and Seizure Warrant for 294 Nevada 275 Emmet, Arkansas."

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)).  "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment."  *Id*. (citing, *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).   "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.  DISCUSSION

### A.  Failure to Produce Controlled Buy Video

As an initial matter, the Court notes Plaintiff alleges for the first time mentions in his deposition and again in his Response that Defendant Brown and Cody Ferguson failed to provide video of the controlled as ordered in the Court's Initial Scheduling Order.  (ECF No. 79).   The Court finds this claim is not properly before the Court for decision because Plaintiff did not make any allegations relating to the failure to produce the video in his Second Amended Complaint. Moreover, the proper place for the Court to have considered a failure of a party to turn over a video or other evidence would have been during the discovery phase in this case.  Although Plaintiff filed a Motion to Subpoena Body Cam Footage and Control Buy Footage on December 3, 2019, (ECF No. 59), the Court denied Plaintiff's motion because Plaintiff did not identify "where the video footage was recorded, who recorded the video footage, and which Defendant(s) has possession of the video footage so that a subpoena can be issued."  (ECF No. 60).  Plaintiff did not

file any additional motion requesting production of these videos.  Accordingly, I recommend the Court not address Plaintiff's claim set forth in the Response.

      **B.** ***Heck v. Humphrey***

Plaintiff alleges in the Second Amended Complaint that Defendants Dorman and Brown were involved in unlawful searches and seizures of his residence on August 30, 2018 and October 10, 2019.  (ECF No. 6).  He also alleges these Defendants were involved in a controlled buy of drugs on October 3, 2018 which led to his unlawful arrest on October 10, 2018.

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held a claim for damages for "allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" is not cognizable until "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. 486-87.  The Court noted if a successful claim would not demonstrate the invalidity of an outstanding criminal judgment, it should be allowed to proceed.  The *Heck* doctrine has been applied to bar claims for injunctive or declaratory relief and damages.  *See Smith v. Norris*, 40 Fed. Appx. 305 (8th Cir. 2002) (unpublished); *Rosendahl v. Norman*, 242 F.3d 376 (8th Cir. 2000).

Here, all of Plaintiff's claims are based on an underlying arrest and prosecution for which he was convicted and sentenced.  As previously stated, on March 26, 2019, Plaintiff voluntarily pled *nolo contendere* on the charge of Delivery of Methamphetamine resulting from the October 3, 2018 controlled substance purchase.  That same day, Plaintiff also pled *nolo contendere* to: 1) Possession of Drug Paraphernalia to Ingest, Inhale, etc.; 2) Use or Possession of Paraphernalia to

Conceal, etc.; 3) Possession of Marijuana; and 4) Possession of Paraphernalia.  The record reflects Plaintiff was represented by counsel during these proceedings.

Plaintiff has not alleged his convictions have been invalidated by the highest state court or in federal *habeas* proceeding.  His claims concerning his conviction are therefore barred by *Heck*. Plaintiff's illegal search claims are also *Heck*-barred. While a § 1983 action for illegal search is not categorically barred by *Heck*,[7] in this case, Plaintiff pled guilty to possessing drugs that were recovered in the search. Therefore, a determination that the search was invalid would undermine the validity of his conviction, in contravention of *Heck*.

Plaintiff may not use the civil rights statutes as a substitute for *habeas corpus* relief.  In other words, he cannot seek relief pursuant to § 1983 relating to his arrest and his subsequent confinement.  *See e.g., Edwards v. Balisok*, 520 U.S. 641, 648 (1997); *Preiser v. Rodriquez*, 411 U.S. 475, 500 (1973) (*habeas corpus* is the sole federal remedy for prisoners attacking the validity of their conviction or confinement).  Accordingly, I recommend Defendants Dorman and Brown be granted summary judgment as Plaintiff's claims against them are barred by *Heck v. Humphrey*.

---

[7]**Error! Main Document Only.**In footnote seven, the Supreme Court in *Heck* explained a damages action for an illegal search does not necessarily imply the invalidity of a conviction.  *Heck*, 512 U.S. at 487 n. 7.  Specifically, the Court said: "a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction.  Because of doctrines like independent source and inevitable discovery, and especially harmless error, such a § 1983 action, even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful.  In order to recover compensatory damages, however, the § 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury, which, we hold today, does *not* encompass the "injury" of being convicted and imprisoned (until his conviction has been overturned)."  *Id.*  The Eighth Circuit has interpreted this footnote to create a general exception from *Heck* for Fourth Amendment unreasonable search and seizure claims. *See, Simmons v. O'Brien*, 77 F.3d 1093, 1095  (8th Cir. 1996) ("Because harmless error analysis is applicable to the admission at trial of coerced confessions, judgment in favor of Simmons on this § 1983 action will not necessarily demonstrate the invalidity of his conviction.").

### C.  Seizure of Property

Plaintiff claims Defendants Dorman and Brown violated his constitutional rights when they took $1490 in cash from his residence and failed to return it.  First, there is no question the government can seize property as evidence of a crime.  *See Jackson v. United States*, 526 F.3d 394, 397 (8th Cir. 2008) (stating that a Fed. R. Crim. P. 41(g) motion for return of evidence is properly denied if, *inter alia*, "the government's need for the property as evidence continues").  Second, Defendants Dorman and Brown deny they took any money from Plaintiff or his residence and Plaintiff has provided with the Court with a state court order which orders the return of the money.

Even if the Court assumes for purposes of the summary judgment motion that Defendants Dorman and Brown did unlawfully take and retain cash belonging to Plaintiff, the Supreme Court has held that an unauthorized intentional deprivation of property by a state or county employee does not constitute a violation of the procedural requirement of the Due Process Clause of the Fourteenth Amendment so long as a meaningful post-deprivation remedy for the loss is available.  *Hudson v. Palmer,* 468 U.S. 517 (1984).  Arkansas law provides a post-deprivation remedy for a loss of property in the form of an action for the tort of conversion.  *See Brown v. Blake,* 86 Ark. App. 107, 161 S.W. 3d 298 (2004).  Because there exists a meaningful post-deprivation remedy for Plaintiff's alleged loss, Plaintiff does not have a valid federal claim under 42 U.S.C. § 1983.  Accordingly, Plaintiff's claim for the seizure of $1490 in cash fails as a matter of law.

### D.  Official Capacity Claims

Plaintiff also sues Defendants Dorman and Brown in their official capacities.  Under § 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities.  *Gorman v.*

*Bartch*, 152 F.3d 907, 914 (8th Cir. 1998).  Official capacity claims are "functionally equivalent to a suit against the employing governmental entity."  *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010).  In other words, Plaintiff's official capacity claims against Defendants Dorman and Brown are treated as claims against their employer – Hempstead County and/or the DTF.  *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor."  *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013).  To establish liability on the part of Hempstead County or the DTF under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity."  *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted).

Here, Plaintiff has not alleged any policy, practice, or custom of Hempstead County or the DTF contributed to the alleged violation of Plaintiff's constitutional rights.  Accordingly, Plaintiff's official capacity claims against Defendants fail as a matter of law.  *Id.*[8]

## IV. CONCLUSION

For the reasons stated above, I recommend Defendants Dorman and Brown's Motion for Summary Judgment (ECF No. 65) be **GRANTED** and all individual and official capacity claims against them be **DISMISSED WITH PREJUDICE**.

All other claims in this matter were previously dismissed (ECF No. 48) or are recommended for dismissal (ECF Nos. 89, 90), I therefore recommend this entire case be **DISMISSED WITH PREJUDICE**.

---

[8] Because the Court has found Defendants did not violate Plaintiff's constitutional rights it is not necessary to address the issue of qualified immunity.

The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

DATED this 11th day of May 2020.

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE